UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JOY EYVONNE SOMMERSETT,

        Plaintiff,

-v-                                                  No. 09 Civ. 5916 (LTS)(KNF)

THE CITY OF NEW YORK et al.,

        Defendants.
-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Joy Eyvonne Sommersett ("Plaintiff"), proceeding pro se, brings this action against the City of New York and the New York City Department of Probation ("Probation Department") (collectively, "Defendants"), alleging disparate treatment, failure to promote, and a hostile work environment due to age discrimination and retaliation for having filed previous race- and age-discrimination complaints with the New York State Division of Human Rights ("SDHR") (in 1991 and 2005) and the Equal Employment Opportunity Commission ("EEOC") (in 2005). The claims against Defendants are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq. ("ADEA"), and the New York State Human Rights Law, N.Y. Exec. L. §§ 290, et seq. ("NYSHRL"). The Court has jurisdiction of Plaintiff's federal-law claims pursuant to 28 U.S.C. § 1331, and exercises supplemental jurisdiction of the state-law claims pursuant to 28 U.S.C. § 1367(a).

        Defendants urge that all of Plaintiff's claims under Title VII and the ADEA must be dismissed because Plaintiff failed to exhaust her administrative remedies for the acts complained of; that Plaintiff's claims under the NYSHRL are barred by the doctrine of election

Copies mailed/faxed to Ms Sommersett
Chambers of Judge Swain    6-28-11

of remedies; and the complaint should be dismissed in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

The Court has considered thoroughly the parties' submissions. For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

According to the form complaint ("Compl. Form") and the attached exhibit ("Compl. Ex." and, with the Compl. Form, the "Complaint") outlining her Complaint for Employment Discrimination, Plaintiff is an African-American woman (Compl. Form at 1), was born in 1945 (Compl. Form at 3), and has worked for the Probation Department as a probation officer since 1984. (Id.) Plaintiff has filed race and age discrimination complaints with administrative agencies against the Probation Department twice, in 1991 and 2005.

### *Plaintiff's 1991 Complaint to SDHR*

According to the Recommended Findings of Fact, Opinion and Decision, and Order issued in 2008 by an administrative law judge pursuant to Plaintiff's 2005 complaint ("2005 SDHR Opinion"), Plaintiff had filed a prior complaint ("1991 Admin Complaint") of racial discrimination with the SDHR (2005 SDHR Opinion ¶ 4), regarding an incident in which Arthur Levitt, a "white, Jewish male supervisor," now deceased, allegedly called her a "black bitch" in connection with a dispute over a parking space (Compl. Form at 2). The 1991 Admin Complaint was settled by the parties in 2003. (2005 SDHR Opinion ¶ 5.)

### *Plaintiff's 2005 Complaints to SDHR and EEOC*

In 2005, Plaintiff filed a second complaint with the SDHR ("2005 Admin Complaint"), alleging unfair treatment because of her age and race, and retaliation for having filed the 1991 Admin Complaint. (2005 Admin Complaint ¶ 3.) This complaint was also

concurrently submitted to the EEOC (id., at 3; see also EEOC Letter to Department of Probation), and was amended in 2006 ("Amended Admin Complaint") to include additional allegations (see generally Amended Admin Complaint).

In April 2008, following an investigation by the SDHR, an administrative law judge made a recommendation that all of Plaintiff's discrimination claims be dismissed. In June 2008, this recommendation was adopted in its entirety by the SDHR in a Notice and Final Order. In March 2009, the EEOC issued a letter to Plaintiff ("EEOC Right-to-Sue Letter"), notifying her that the Commission had adopted the SDHR's findings and dismissed the Amended Admin Complaint, and that Plaintiff was entitled to file a lawsuit in federal or state court based on those Title VII and ADEA claims which had been raised in her administrative complaint.

### *Filing and Factual Background of Plaintiffs' Instant Claims*

In the instant suit, Plaintiff complains primarily of numerous incidents that allegedly occurred subsequent to her 2005 Admin Complaint, in which her superiors and co-workers at the Department of Probation allegedly treated her improperly due to age discrimination, or in retaliation for her previous discrimination complaints, or both. In her Complaint, she states that the alleged discriminatory acts occurred on "1/1/08 – present. (additionally, the past 25 years)." (Compl. Form ¶ IIB.) However, the Complaint identifies only post-2007 events.

In the Exhibit to the Complaint, Plaintiff alleges that, in December 2008, she was falsely accused of mishandling a probation case in a manner which led to the deaths of three people. (Compl. Ex. ¶¶ 2-4.) As a result, Plaintiff was suspended (id. at 2); placed on probation (id.); and transferred to an assignment in Queens which was distant from her home in the Bronx, and which required her to perform "high-risk" duties (id. ¶¶ 9-11). Plaintiff further alleges,

generally, that this transfer was part of a pattern in which employees were terminated in retaliation for filing complaints against the Probation Department (id. ¶ 1), and older probation officers with health problems were deliberately given assignments that were "inconvenient or risky because of their health" in order to encourage them to resign (id. ¶ 24), or were otherwise transferred to high-risk duties "as a punitive measure" (id. ¶ 32).

Plaintiff also complains that the Probation Department wrongfully failed to promote her (id. ¶ 25), that multiple supervisors have given her undeserved reprimands (id. ¶¶ 6, 17-18), that she was not evaluated properly immediately after the transfer to Queens (id. ¶¶ 8-10, 13), and that superiors have manipulated her working conditions in various ways in order to hamper her successful job performance – e.g., failing to provide her with proper duty instructions (id. ¶ 11), training (id. ¶ 29), case documentation (id. ¶ 12), field partners (id. ¶¶ 14-16), and computer equipment (id. ¶ 20) – while also sending her to unnecessary training sessions which took away from time needed to manage her workload (id. ¶¶ 19, 28).

Additionally, Plaintiff alleges that several incidents which occurred both before and after her 2005 Admin Complaint demonstrate hostility towards her based on her age and prior discrimination complaints – including a comment by a supervisor indicating that the Department was "just waiting for [Plaintiff] to retire" (id. ¶ 8); a supervisor's complaint about the cost of having to appear in court pursuant to Plaintiff's prior discrimination case (id. ¶ 27); comments by unspecified employees calling her a "troublemaker" following her complaints (id. ¶ 23); and loud statements by a supervisor that a discrimination complaint had been filed and a comment by the same supervisor that "[W]e have to get [Plaintiff]" (id. ¶ 22).

Finally, Plaintiff complains of a number of other incidents involving negative treatment by co-workers or superiors. She alleges that she frequently suffered "unprofessional

and verbally abusive" treatment when meeting with a branch chief (Compl. Ex. ¶ 5); and that she was: cursed at by a supervisor (id. ¶ 7); falsely accused of referring probationers to the wrong employment programs (id. ¶ 17); incorrectly criticized for the wording of one of her reports (id. ¶ 18); inappropriately questioned as to the contents of a bag containing personal items (id. ¶ 18); repeatedly told by a branch chief that "[i]f [he] didn't want [Plaintiff] to work here, [she] would not be here" (id.); targeted with glares and angry faces (id. ¶ 22); avoided by supervisors in the hallways (id.); criticized in front of others by a supervisor who said that "[Plaintiff] didn't do anything for five years" and ignored when she complained about this incident to the departmental EEO office (id. ¶ 26); harassed with false accusations of failing to read office emails, and told "in a loud harsh manner before staff in the immediate area" that she needed to attend computer training (id. ¶ 28); ignored by a supervisor who would avoid eye contact, frown, and mutter whenever Plaintiff asked a question; told not to "open[] up a can of worms" by filing reports of potential child abuse by probationers (id. ¶ 31); and forced to miss a doctor's appointment in order to avoid being disciplined (id. ¶ 33).

## DISCUSSION

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). In adjudicating the motion, the Court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in [the complaint] by reference." Rothman v. Gregor, 220 F.3d 81, 89 (2d Cir. 2000). Furthermore, "where a pro se plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the

plaintiff's pleaded allegations." Milano v. Astrue, No. 05 Civ. 6527(KMW)(DF), 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007) (Freeman, M.J.) (collecting cases).

With respect to the pleading standards of Rule 8, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949. This plausibility standard does not amount to a "probability requirement," but it calls for more than a "sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citation omitted). "[A] complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim," Barbosa v. Continuum Health Partners, Inc., No. 09 Civ. 6572 (SAS), 2010 WL 768888, at *3 (S.D.N.Y. Mar. 8, 2010) (internal quotation marks omitted).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); see also Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008). Such a complaint should be interpreted to raise the strongest arguments that it suggests, Weixel v. Bd of Educ., 287 F.3d 138, 145-46 (2d Cir. 2002), although it is not appropriate to assume that a plaintiff can prove facts or establish claims that she has not alleged in the complaint. Assoc. Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenter, 459 U.S. 519, 526 (1983).

### *Administrative Exhaustion of Title VII and ADEA Claims*

Before seeking redress in federal court under Title VII or the ADEA for alleged instances of employment discrimination, a plaintiff must first address the alleged discrimination in a timely complaint to the EEOC or a state agency with equivalent authority. See 42 U.S.C. § 2000e-5(e) (Title VII); 29 U.S.C. §§ 626(d), 633(b) (ADEA). Defendants argue that Plaintiff's Complaint, which does not assert any of the claims specifically described in Plaintiff's administrative complaints, must be dismissed as unexhausted to the extent Plaintiff seeks to pursue Title VII and ADEA claims.

The Second Circuit recognizes an exception to this "exhaustion" requirement where a plaintiff's claims in a discrimination suit are "reasonably related" to the allegations raised in her prior EEOC complaint, since allowing such a suit to be brought would not frustrate the statutory purpose of preserving an opportunity for administrative investigation, mediation, and redress of the complaint. Butts v. New York Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1401-02 (2d Cir. 1993). For the purposes of this exception, a claim is deemed to be "reasonably related" to a prior EEOC complaint (1) "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) where the claim alleges "retaliation by an employer against an employee for filing an EEOC charge;" or (3) where the claim "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Id. at 1402-03. These exceptions apply with equal force to claims brought under the ADEA, whose exhaustion requirement is identical to that of Title VII. Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003). The first of these exceptions is inapplicable to conduct which takes place after the EEOC has completed its investigation. Perez, 2009 WL 3634038 at *16.

None of the conduct alleged in the Complaint was addressed in Plaintiff's previous administrative complaints. Thus, Plaintiff's claims under the ADEA and Title VII may proceed only to the extent they are reasonably related to the 2005 administrative complaints on the basis of which her EEOC Right-to-Sue Letter was granted.

None of the post-2007 conduct specifically alleged in the current Complaint would have fallen within the scope of an EEOC investigation that would have grown out of the 2005 administrative complaints, nor does any of the conduct described in the Complaint constitute discrimination allegedly carried out in precisely the same manner alleged in the EEOC charge. Accordingly, to the extent Plaintiff seeks to pursue the instant claims as ones of age- or other non-retaliation based disparate treatment or hostile work environment under ADEA or Title VII based on post-2007 conduct the Complaint must be dismissed as unexhausted. Plaintiff's allegations of retaliation suffice, however, to frame the requisite reasonable relationship with the year 2005 administrative complaints.

### *Preclusion of Certain Claims Brought Under the NYSHRL*

In contrast with the federal statutes addressing employment discrimination, which require that plaintiffs exhaust their administrative remedies before filing suit, equivalent employment discrimination claims under New York state law are subject to an administrative preclusion rule, under which a party who has pursued an administrative complaint of discrimination with a state agency forfeits the right to sue upon the same claims. N.Y. Exec. Law § 297(9) (McKinney Supp. 2011). The statutory preclusion rule does not, however, bar NYSHRL lawsuits based on claims that the state agency dismissed as untimely. Id.

Plaintiff is barred from pursuing her NYSHRL claims in this action to the extent the claims were raised in her 2005 administrative complaints, except any claims relating to the

period prior to December 12, 2004, which were dismissed by the SDHR as untimely.[1] Plaintiff's NYSHRL claims regarding post-2007 conduct were not raised with the SDHR and thus are not precluded by the prior administrative proceedings.

### *Whether Plaintiff's Remaining Claims are Plead Sufficiently*

Although Plaintiff need not allege facts sufficient to make out a prima facie case for any of her discrimination claims in her Complaint, the elements thereof provide an outline of what is necessary to render her claims for relief plausible. The same analysis is generally applied to claims brought under Title VII and the ADEA alleging disparate treatment, Smith v. Xerox Corp., 196 F.3d 358, 367 (2d Cir. 1999), a hostile work environment, Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999), or retaliation, Manzi v. DiCarlo, 62 F. Supp. 2d 780, 793-94 (E.D.N.Y. 1999). Furthermore, "claims under the NYSHRL are analyzed identically to claims under the ADEA and Title VII," and thus "the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under the ADEA and Title VII." Smith, 196 F.3d at 363 n.1. Consequently, the Court will only discuss Plaintiff's federal and state claims separately where the distinct administrative and procedural requirements of the respective statutes differ.

A plaintiff alleging disparate treatment discrimination must establish a prima facie case by showing "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). Where the complaint alleges a failure to

---

[1] As noted above, the Complaint in this action refers specifically only to post-2007 events.

promote, the plaintiff must ultimately show that "1) she is a member of a protected class; 2) her job performance was satisfactory; 3) she applied for and was denied promotion to a position for which she was qualified; and 4) the position remained open and the employer continued to seek applicants." Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 (2d Cir. 2000) (internal quotation marks omitted).

Title VII also makes it unlawful for an employer "to discriminate against . . . any individual . . . because he has . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). The ADEA includes a nearly identical anti-retaliation provision. 29 U.S.C. § 623(d); see also Manzi, 62 F. Supp. 2d at 793-94. In order to prove a prima facie case of retaliation, a plaintiff must show that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." Gregory, 243 F.3d at 700 (internal quotation marks omitted).

### *Disparate Treatment*

As Plaintiff's federal disparate treatment claims are barred as unexhausted, Plaintiff's only remaining disparate treatment claim is the NYSHRL claim. Determining what constitutes an "adverse employment action" for the purposes of a discrimination claim requires a careful case-by-case analysis. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997). In general,

> [a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion

> evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.

Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (alteration in original) (internal quotation marks and citations omitted). However, while a court must carefully consider the unique circumstances of each claim, employment-discrimination laws are not intended to establish a "general civility code for the American workplace." See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998) (discussing Title VII). Mere unfair criticism or reprimands unaccompanied by more serious results, such as probation or a decrease in pay, cannot by themselves support a discrimination claim. Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001).

Plaintiff alleges in her Complaint and/or proffers in her opposition papers that she was wrongfully suspended; placed on probation; and transferred to a distant assignment which required a four-hour commute and involved high-risk duties. Plaintiff additionally alleges that she applied for a promotion twice by taking a civil service exam designed for that purpose, but was not promoted; although she does not state whether she passed the exam, she does allege that other probation officers achieved or retained the same or higher positions despite failing the same exam multiple times. Plaintiff further points to incidents suggesting discriminatory animus on the part of at least one supervisor, and alleges a systematic pattern of concerted ill-treatment of older Probation Department employees intended to encourage their resignation. Taken together, these allegations suffice minimally, when read liberally and in the light most favorable to Plaintiff, to state a claim of unlawful age-based discriminatory treatment with respect to her allegations of wrongful suspension, probation status, transfer, and failure to promote, with which Plaintiff may proceed under the NYSHRL.

Retaliation

By contrast, a plaintiff alleging retaliation against protected activity need only show that her employer's actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). For example, a shift in job responsibility involving an increased emphasis on "more arduous" duties might be considered adverse by a trier of fact, even where those duties are included in the plaintiff's job description. Id. at 70-71. This relaxed requirement is equally applicable to retaliation claims brought under the ADEA. Boland v. Town of Newington, 304 F. App'x 7, 9 (2d Cir. 2008).

In addition to allegations of discriminatory animus, Plaintiff also refers to several incidents which raise a plausible, albeit barely, inference of retaliatory animus on the part of her co-workers and several supervisors, including one incident – a vocal expression of apparent intent, on the part of a supervisor, to retaliate against Plaintiff due to her administrative complaint – which clearly suggests a direct causal connection between the alleged animus and abusive conduct. Her allegations of retaliatory conduct include allegations of conduct that, when read liberally and in the light most favorable to her, could have deterred a reasonable employee from filing a discrimination complaint (e.g., wrongful demotion to probationary status, transfer to more arduous duty with significantly increased travel time, failure to provide necessary training). Plaintiff has thus pleaded sufficiently her Title VII, ADEA and NYSHRL retaliatory discriminatory treatment claims.

*Hostile Work Environment Claim*

A plaintiff's civil rights are violated where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21 (internal quotation marks and citations omitted).

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Id. at 23.

The Court finds that Plaintiff's allegations are sufficient, at this pleading stage, to state a claim for age- or retaliation-based hostile work environment. However, insofar as it is premised upon age discrimination rather than retaliation, Plaintiff's claim of a hostile work environment may only proceed under the NYSHRL, as the conduct alleged was neither addressed in, nor reasonably related to, her prior complaint to the EEOC.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is granted to the extent noted above. The case will go forward with respect to Plaintiff's retaliation claims under the ADEA and Title VII and her NYSHRL age- and retaliation-based disparate treatment and hostile work environment claims.

This Memorandum Opinion and Order resolves docket entry no. 9.

This matter continues to be referred to Magistrate Judge Fox for general pretrial management purposes.

SO ORDERED.

Dated: New York, New York
June 28, 2011

LAURA TAYLOR SWAIN
United States District Judge